UNITED STATES OF AMERICA

vs.                                    Docket No. 18-CR-10270-RWZ

ALLAH MALLORY

## DEFENDANT'S SENTENCING MEMORANDUM

Allah ("Parod") Mallory requests that this Honorable Court impose a sentence of time-served. It is the only reasonable, logical, and appropriate disposition given all of the relevant sentencing considerations and attendant circumstances.

The PSR indicates that the guideline range is 21-27 months. Mr. Mallory has been held in Federal custody since August 23, 2018. By the date of sentencing, Mr. Mallory will have served approximately 18.5 months.

Although the parties disagree about whether the defendant should be granted a downward adjustment for Acceptance of Responsibility, (which, if granted, would lower the applicable guideline range to 15-21 months), that issue is beside the main point, which is this:

In September of 2019, while still in Federal custody, Mr. Mallory was delivered to Brockton Superior court and brought to trial on state charges that were pending at the time this Federal offense occurred. Mr. Mallory was convicted, and on

1

September 10, 2019, the state court imposed a sentence of 16-18 years in state prison.  Mr. Mallory is obligated to serve that regardless of the sentence the court imposes here.

In this case, Mr. Mallory sold a miniscule quantity of drugs to a government informant (herein after "CW-1") in exchange for $200.  The transaction was captured on video, and the defendant confessed to the crime at trial.  In consideration of all factors, the imposition of a sentence of time-served, concurrent with the state sentence, which has already been imposed, is the only appropriate and just outcome in this case.[1]

## STATEMENT OF THE CASE

Approximately a decade prior to this incident, Mr. Mallory met CW-1 while they were both incarcerated in the Plymouth House of Corrections.  They used to play chess together, and established a friendship.  In the spring/summer of 2018, the two randomly met in the streets of Brockton.  By that time, CW-1 had been working as a paid informant for the FBI for months, and had been encouraged to conduct controlled buys with as many people as possible.  In exchange, among other things, CW-1 was not prosecuted for an incident in which he was caught with a significant amount of cocaine base.  He was also paid over

---

[1] The government previously indicated to Court that, after conviction, it would be requesting a guideline range sentence, and would not be requesting that the court impose an incarcerative sentence from and after the state sentence.

2

$50,000 dollars by the FBI.

The FBI set up a video-recorded drug transaction between CW-1 and Mr. Mallory, which occurred on July 9, 2018. The video depicted Mr. Mallory selling a half-gram of crack cocaine, and a half-gram of heroin to CW-1 in exchange for $200.

Undersigned counsel received the file in late July, 2019 after prior counsel withdrew. The case proceeded to trial on November 4, 2019. At trial, although the defendant's testimony differed in some respects to the testimony of the government's witnesses, Mr. Mallory confessed to every essential element of the indictment. Namely, he admitted to selling heroin and cocaine base to CW-1 on July 9, 2019. The defendant was convicted on November 7, 2019.

The defendant's objections have been incorporated into the notes appended to the PSR. The defendant's central objection to the guideline range is the non-applicability of a two-level decrease for Acceptance of Responsibility. Other objections are factual in nature, which counsel intends to argue at sentencing, but do not ultimately affect the guideline sentence range.

**<u>ARGUMENT</u>**

**A SENTENCE TO TIME SERVED WOULD BEST SATISFY THE GOALS OF SECTION 3553(a)**

The sentencing factors set forth in s 3553(a) is the lodestone from which the court should impose its ultimate

3

sentence.  After consideration of those factors, it is clear that a sentence of time-served, concurrent with the 16-18 year state sentence, is warranted.

**A.    The history and characteristics of the defendant.**

Mr. Mallory was born in Bronx, NY.  He grew up in the housing projects during the 1980's.  He was born into poverty, a condition that he was never ultimately able to escape in his life.  As the PSR indicates, his upbringing in the Bronx was marked by violence, substance abuse, physical abuse, and aberrant death.  In the early 1990's, when Mr. Mallory was approximately 13 years old, his mother and siblings relocated to Brockton to escape the negative trappings of the Bronx.

Problems persisted nevertheless.  The new environment, while still somewhat unstable, was actually an improvement compared to his experiences in the Bronx projects.  It was in Brockton that Mr. Mallory worked, became a father, and has lived ever since.

The defendant acknowledges that he has been convicted of certain crimes as outlined in the PSR.  This was generally a function of his being left to find his own way in Brockton at very young age, his substance abuse issues, and his general lack of access to significant financial and educational resources.

Mr. Mallory has worked various jobs in life, mostly in the automotive industry.  As the court is well aware, prior

convictions severely reduce one's available job opportunities. That was the quandary in which Mr. Mallory found himself, along with the financial obligations to support himself, his children, and those close to him.

Throughout my representation of Mr. Mallory, he has been an excellent client, despite being put in a challenging situation. He has always been respectful and insightful, particularly in assisting me with the defense of the case. Defense counsel has reviewed Mr. Mallory's handwritten notes trial, which not only reflect his own remorsefulness to God in terms of his own actions, but also the hope that God will grant forgiveness and healing to CW-1 as well.

While I recognize the extent to which I might be able to assist Mr. Mallory at this particular time in his life might be limited, I personally believe the imposition of a sentence of time served is the only fair and just outcome in this case.

**B.   The nature and circumstances of the offense**

CW-1 convinced Mr. Mallory, to sell him drugs under auspices that it was for CW-1's own use. They were friends. The deal was for a half a gram of heroin and a half a gram of cocaine base. The transaction occurred on July 9, 2018 in Brockton. Mr. Mallory was depicted on video conducting the transaction, and was arrested approximately a month and a half later in what was a part of "Operation Landshark." At trial,

Mr. Mallory admitted both on direct and cross examination that he sold the illegal substances to CW-1, and was convicted of thereafter.

**C.    The sentencing rationales set forth in 18 U.S.C. § 3553(a)(2) supports the imposition of a sentence of time served.**

In addition to the personal characteristics of the defendant and the nature and circumstances of the offense, section 3553(a) directs the Court to consider the need for the sentence imposed:

(A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)    to afford adequate deterrence to criminal conduct;

(C)    to protect the public from further crimes of the defendant; and

(D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

On September 10, 2019, a state court judge in Brockton Superior Court ordered Mr. Mallory to serve a 16-18 year prison sentence for drug distribution and firearms offenses.  He will serve that sentence regardless of the sentence the court imposes here.  He has been held in Federal custody for approximately 18 months.  Depending on the applicability of Acceptance of Responsibility, the guideline sentence range is either within, or slightly above, the time Mr. Mallory has already served.

6

Even the cost of transportation of Mr. Mallory to a Bureau of Prisons facility (let alone the amount of money it would cost to house and feed him there) makes little fiscal sense when viewed through the lens of justice, fairness, or economic considerations.

Economic costs aside, transportation to a Bureau of Prisons facility would cause major disruption in Mr. Mallory's current life. He has been at PCCF for the last year and a half, and least appears to have reached a certain level of life equilibrium there. He has no prior familiarity with the Bureau of Prisons. His state conviction is on appeal, and he has significant legal paperwork and that he must review in order to litigate the appeal. In counsel's experience, in the transfer of inmates from one facility to another, there are frequently problems in transporting all property, including legal work, clothing, and canteen. These items frequently get lost, or the inmate is told he cannot possess them. Cosmetics and toiletries are typically non-transferrable between institutions, and thus become sunk costs for the inmate. Mr. Mallory has a considerable amount of legal work in his case, and it would only be more costly and time-consuming if counsel had to re-copy and re-send any portion of it back to him, wherever he might be held.

Moreover, Mr. Mallory has a sentencing appeal scheduled for

May of this year.  If he were sent to a Bureau of Prisons facility during that time, it is questionable whether he could be brought to Suffolk Superior Court for the hearing.  If he were unable to attend this hearing, the next available hearing would be next year, in May of 2021.  Even if he were to be sentenced to a term in the Bureau of Prisons for a time period that would allow him to attend the sentencing hearing this year, it makes little sense to ship him from PCCF, to a BOP facility, back to the Massachusetts Department of Corrections in a two-month time span. It only increases overall costs, the disruption of Mr. Mallory's life, and the possibility that his property may become lost.

Mr. Mallory will be released from his state sentence when he is approximately 60 years old.  A sentence of time serve still achieves all of the above factors, especially given the fact that this was a non-violent, low-level drug offense for which the defendant will have served additional jail time not credited to him by the state court (which apparently lies within the discretion of the state court).  Given this unusual situation, and the relatively minimal Federal guideline sentence range, counsel suggests that the sentencing factors as set forth above need not apply with the same weight that they might otherwise.  At the expiration of this Federal sentence, Mr. Mallory will simply begin his lengthy, and already-imposed state

8

sentence.  It makes little sense to send Mr. Mallory to the Bureau of Prisons for sixty or ninety days (wherever that may be), only to have him returned back into state custody to serve another 14-15 years.

**D.**     **The Defendant is Eligible for a Two-Level Decrease in Offense Level for Acceptance of Responsibility.**

Mr. Mallory testified at trial that he committed every essential element of the government's case, and therefore should receive a two-level decrease for acceptance of responsibility pursuant to USSG § 3E1.1(a).  Mr. Mallory testified that he was the person on the video who sold drugs to CW-1 at the date and time alleged by the government.

Since Mr. Mallory's base offense level is not 16 or higher, the government need/will not grant an additional one-level reduction pursuant to USSG § 3E1.1(b).

The fact that Mr. Mallory exercised his trial rights is not ultimately the determinative factor in considering whether he should be granted Acceptance of Responsibility for the Court. Although not at issue here, he did not deny any facts that may have constituted relevant conduct pursuant to § 1B1.3, and the rule, (pursuant to Application Note 1), provides that even a defendant's unsuccessful challenge to evidence pertinent to relevant conduct is not a bar to the defendant receiving Acceptance of Responsibility.

In this case, the defendant opted to proceed with a jury trial, primarily because a guilty plea would have provided him virtually no benefit in light of state sentence already imposed. The government refused to dismiss the matter. In this context, the sentencing guidelines indicate that "[c]onviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial." Id at (Application Note 2).

Furthermore, "[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review." Id at (Application Note 5).

While the traditional application of Acceptance of Responsibility is based upon a defendant's pre-trial statements and conduct, Mr. Mallory's situation is an outlier in the sense that he essentially received no benefit from pleading guilty. Further, nothing in the Sentencing Guidelines, or its application notes prohibits the Court from finding that the defendant did accept responsibility for the offenses charged, despite the fact that he exercised his Constitutionally-

guaranteed right to a jury trial.  He should be entitled to the reduction, which would move the applicable guideline range to 15-21 months, for which the imposition of a sentence of time-served is entirely appropriate.

**E.    Kinds of Sentences Available**

This Court must consider all of "the kinds of sentences available" by statute, 18 U.S.C. § 3553(a)(3), even if the "kinds of sentence … established [by] the guidelines" zones recommend only a lengthy prison.  *See Gall*, 552 U.S. at 59 & n.11.  Further, Congress directed the Commission to "insure that the guidelines reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense," and the "general appropriateness of imposing a term of imprisonment on a person convicted of a crime of violence that results in serious bodily injury."  28 U.S.C. § 994(j).  Congress issued this directive in the belief that "sentencing decisions should be designed to ensure that prison resources are, first and foremost, reserved for those violent and serious criminal offenders who pose the most dangerous threat to society," and that "in cases of nonviolent and nonserious offenders, the interests of society as a whole as well as individual victims of crime can continue to be served through the imposition of alternative sentences, such

11

as restitution and community service." *See* Pub. L. No. 98-473, § 239, 98 Stat. 1987, 2039 (1984) (set forth at 18 U.S.C. § 3551 note).

Mr. Mallory will not be eligible to serve any term of supervised release until he is approximately 60 years old. If the court sees fit to impose supervised release at all, the defendant requests no special conditions of probation at this time. In terms of drug treatment, Mr. Mallory will have been clean for fifteen years. In terms of mental health treatment, Mr. Mallory has never been treated for, nor diagnosed with, any mental health condition. Vocationally, Mr. Mallory expects to be at an age at which employment or vocational training may not be particularly helpful or necessary.

Fifteen years is an objectively significant period in the life of any human being. The services or assistance Mr. Mallory might require fifteen years in the future may be completely different from what he may require now (if any). He, as we all do, will continue to evolve into a different version of himself. Prescience would a valuable gift, if at all possible to acquire. Short of that, it is difficult to assume that whatever conditions of supervised release recommendations that might currently apply would still be applicable at the time they might actually be imposed.

Mr. Mallory requests no supervised release from and after

this sentence.  To the extent one is required, the defendant requests no special conditions be imposed at this time.

## CONCLUSION

Mr. Mallory admitted under oath that he committed the offenses in this case, and should receive a two-level reduction for Acceptance of Responsibility which, in base offense level to 10, would bring the guideline sentence range to 15-21 months. Even without acceptance of responsibility, his guideline range would be 21-27 months.  Of that, he will have served 18.5 months by the time of sentencing.

After this sentence expires, Mr. Mallory will then serve the remainder of his 16-18 year state prison.  Under these circumstances, a sentence of time-served is "sufficient, but not greater than necessary," to achieve the sentencing goals of 18 U.S.C. § 3553(a).  Taken together, the history and characteristics of the defendant, the nature and circumstances of the offense, the sentencing factors described in Section 3553, all support the disposition requested herein.

Respectfully submitted,

ALLAH MALLORY
By his attorney,

/s/*Austin C. Tzeng*                      Dated: March 5, 2020
Austin C. Tzeng
The Law Office of Austin C. Tzeng
21 Mayor Thomas J. McGrath Highway
Suite 501
Quincy, MA  02169

781-929-4882
tzengdefense@gmail.com

<u>Certificate of Service</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on March 5, 2020.

/s/*Austin C. Tzeng*
Austin C. Tzeng

Timothy E. Moran, Esq.
U.S. Attorney's Office
1 Courthouse Way, Suite 9200
Boston MA  02210
Timothy.E.Moran@usdoj.gov

Ms. Carolyn Patten
U.S. Probation Office
One Courthouse Way, Suite 1200
Boston MA  02210
Carolyn_Patten@map.uscourts.gov