UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA     )
          )
    v.             )     Cr. No. 18-10270-RWZ
          )
ALLAH MALLORY a/k/a "Parod,"    )
    Defendant         )

## SENTENCING MEMORANDUM OF THE UNITED STATES

On July 9, 2018, the defendant ALLAH MALLORY a/k/a "Parod" – while on release

from Plymouth Superior Court after having posted a $50,000 bond – sold drugs to an FBI

cooperating witness.  On August 23, 2018, the FBI arrested the defendant for that sale; his

previous case remained pending in state court.  On November 6, 2019, a jury found the

defendant guilty of distributing cocaine base and heroin, in violation of 21 U.S.C. § 841(a)(1).

The defendant's sentencing hearing is scheduled for March 10, 2020.

For the reasons presented herein, in the PSR, and to be presented at the sentencing

hearing, the government requests principally a sentence of 21 months' imprisonment, which is at

the low end of the advisory guidelines range.  The government does not object to running the

sentence concurrently from its imposition with his state sentence; in fact, by operation of state

law, the defendant will receive credit toward his state sentence for the time served in federal

custody since imposition of the state sentence, on September 10, 2019, so long as he executes a

waiver of extradition.

## I.  BACKGROUND AND THE OFFENSE

This case arose from Operation Landshark, which was an FBI investigation targeting

impact players and repeat offenders in Brockton and Boston.  Law enforcement anticipated that

removal of these defendants, who were household names to police, informants, and the

community, from the streets of Brockton and Boston would result in a significant reduction of the rate of crime, especially shootings and acts of violence.  PSR ¶ 8.

ALLAH MALLORY was one such target.  PSR ¶ 9.  As his criminal history demonstrates, MALLORY has been a significant and dangerous drug dealer in Brockton for some time.  When the FBI learned that MALLORY was dealing drugs despite being on release from state court, it became clear that MALLORY could not be deterred by the criminal charges facing him or the risk of forfeiting his bond and that MALLORY would continue to violate the terms of his pretrial release.  The FBI decided to target him in order to remove him from the streets of Brockton.

During the deal on July 9, 2018, the FBI cooperating witness ("CW-1") purchased $100 worth of both heroin and cocaine base, which were intended as a trial amount.  During the deal, the defendant and CW-1 discussed the defendant's plan to grow marijuana in the basement of the house.  On the video of the deal, which was Ex. 7.1 at trial, the defendant removed the drugs from a larger baggie which he had available.  PSR ¶¶ 16-19.

## II.  GUIDELINES ANALYSIS AND CRIMINAL HISTORY

The PSR found, and the government concurs, that the defendant is base offense level 12 pursuant to USSG § 2D1.1.  PSR ¶ 27.

The defendant does not qualify for a reduction for acceptance of responsibility under USSG § 3E1.1.  PSR ¶ 34.  Application Note 2 says that the "adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse."  See United States v. Beras, 183 F.3d 22 (1st Cir. 1999) (denying reduction despite statement of remorse where defendant went to trial to contest the facts).

Notwithstanding the actual trial, defendant asserts that he "confessed to the crime at trial." Def.'s Mem. at 2. The defendant did not *confess* at trial. He admitted, after the government put forth extensive evidence regarding the reliability of the recordings in the case, that he was the person on the video who dealt the drugs. That admission came amidst numerous false statements regarding his and CW-1's conduct. The defendant contested elements of his guilt, including the nature of the controlled substances, and ultimately contested his guilt to the jury. See United States v. Bello, 194 F.3d 18 (1st Cir. 1999) (denial of an essential element of conviction precludes acceptance). In particular, the defendant built his defense around a vigorous cross-examination of CW-1. See United States v. Rojas-Pedroza, 716 F.3d 1253 (9th Cir. 2013) (defendant's cross-examination of the agent who witnessed his prior removal was a "frivolous challenge to the evidence supporting an element of the offense"). In these circumstances, the defendant is categorically ineligible for acceptance. United States v. Baltas, 236 F.3d 27 (1st Cir. 2001) (defendant went to trial and contested guilty.

As discussed above, the defendant is a repeat drug dealer. He also has a history of violence. Most recently, on August 26, 2019, the defendant was convicted of trafficking more than 100 grams of heroin, trafficking cocaine, possessing a firearm without a license of FID, and a firearm violation after three prior drug or violence convictions, which crimes he committed in 2016. He was sentenced to serve 16 to 18 years on those crimes. PSR ¶ 62.

Prior to that, the defendant was convicted of assault in 2007 and sentenced to probation, which he violated and received 2.5 years (which was overturned on appeal). PSR ¶ 60. Nevertheless, while in custody, the defendant vandalized jail property, for which he was sentenced to 60 days. PSR ¶ 61. And in 2008, he committed assault and battery on a police

officer, for which he was sentenced to 2.5 years in prison.  PSR ¶ 59.  Altogether, the defendant has eight criminal history points, which is Criminal History Category IV.  PSR ¶¶ 63-64.

In addition, the defendant has many convictions for violence, drugs and firearms, going back to age 17, which *do not score*: assault and battery with a dangerous weapon at age 17 (PSR ¶ 38); assault and battery at age 17 (PSR ¶ 39); assault and assault and battery at age 18 (PSR ¶ 18); carrying a firearm without a license or FID card at age 18 (PSR ¶ 41); possession of class D at age 19 (PSR ¶ 42); possession of class D at age 19 (PSR ¶ 43); possession class B drug at age 19 (PSR ¶ 44); assault with a dangerous weapon at age 20 (PSR ¶ 49); assault and battery with a dangerous weapon at age 21 (PSR ¶ 50); reckless operation of a motor vehicle at age 22 (PSR ¶ 51); possession of class D at age 25 (PSR ¶ 54); assault and battery at age 25 (PSR ¶ 56); and interfering with police at age 27 (PSR ¶ 57).

At TOL 12/CHC IV, MONTEIRO's advisory Guidelines Sentencing Range is 21 to 27 months.

### III.  18 U.S.C. §3553(a) FACTORS

Consideration of the §3553(a) factors demonstrates a sentence of 21 months, at the low end of the Guidelines Sentencing Range, is the appropriate sentence in this case.

In the first place, this federal case arose because the defendant violated the conditions of his state release by repeated drug dealing.  The defendant deserves a sentence in this case without regard to whatever sentence he may have earned for himself in state court.

Turning to the defendant himself, he has engaged in violence and drug possession since a young age and has not ceased his criminal ways.  In fact, he has expanded the scope of his criminal conduct, by combining trafficking weights of heroin and cocaine with firearm possession.  As a result, the defendant's past criminal conduct stands squarely at the intersection

of guns and drugs.  It is well known that drug sales, and the corresponding fighting over drug turf, motivates gang violence, which has historically plagued Brockton.  <u>See, e.g.</u>, <u>City of Chicago v. Morales</u>, 527 U.S. 41, 99-100 (1999) (Thomas, J., dissenting) (citing research); <u>United States v. Laboy</u>, 351 F.3d 578, 581 (1st Cir. 2003) (court recounted a Lawrence gang's "need to protect [the gang's] 'turf' in Lawrence from anyone else who would try to sell drugs in the area"); <u>United States v. Patrick</u>, 248 F.3d 11, 16 (1st Cir. 2001) (in RICO prosecution of a Boston gang, the court described that only gang members "could sell on the [gang's] 'turf,' and the gang used actual and threatened violence to deter rivals").

Finally, while the defendant dealt over a small amount of drugs in this case, the deal was actually consistent with a larger course of dealing.  CW-1 purchased a trial amount, not for personal consumption.  The defendant took those drugs from a much larger stash of drugs, indicative of other ongoing sales.  And the defendant was working to expand his business to include marijuana production as well.

The government also requests a term of thirty six months' supervised release, which is mandatory pursuant to 21 U.S.C. § 841(b)(1)(C).  Due to the length of the defendant's state sentence, the government requests only the statutory and standard conditions of supervised release, including drug testing and substance abuse treatment as directed by the Probation Office.

## IV. THE GOVERNMENT'S RECOMMENDATION

For the foregoing reasons, those contained in the PSR and those to be presented at the sentencing hearing, the government requests the following sentence:

- a term of 21 months' imprisonment;

- no fine, because it appears that the defendant cannot pay a fine;

- a term of 36 months' supervised release with the conditions discussed above; and

- a special assessment of $100.

Respectfully submitted,

ANDREW E. LELLING
UNITED STATES ATTORNEY

By:     s/ Timothy E. Moran
        TIMOTHY E. MORAN
        Assistant U.S. Attorney

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

s/ Timothy E. Moran
TIMOTHY E. MORAN

Date: March 7, 2019